# COURT OF APPEALS OF VIRGINIA

### Record No. 0967-25-2

TAMARA QUICK

v.

SPOTSYLVANIA COUNTY SCHOOL BOARD

Present: Chief Judge Decker, Judges Beales and Athey
Argued at Richmond, Virginia

Opinion Issued August 4, 2026[*]

### FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge

Melissa K. Waugh (Belkowitz Law, PLLC, on briefs), for appellant.

Karissa T. Kaseorg (Jamie Heisler Ibrahim; Sands Anderson PC, on brief), for appellee.

### MEMORANDUM OPINION BY
### <u>JUDGE RANDOLPH A. BEALES</u>

Tamara Quick ("Quick"), parent of two students within Spotsylvania County Public Schools ("SCPS"), filed a petition for writ of mandamus against the Spotsylvania County School Board ("the School Board"). In her petition, she alleged that the School Board had violated the Virginia Freedom of Information Act ("VFOIA") by failing to sufficiently fulfill her requests for her children's school records. The Circuit Court of Spotsylvania County denied Quick's petition. Quick now appeals.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

# I. Background[1]

Quick is a parent to two students with disabilities who are eligible to receive special education services under the Individuals with Disabilities Education Act ("IDEA"). SCPS placed both of her children in a private day school, the New Community School ("TNCS"), to enable them to receive needed services.

On April 18, 2024, Quick met with Allison Langridge, Executive Director of Student Support Services at SCPS, to discuss concerns she had about her children's individualized education programs ("IEPs"). What exactly happened at this meeting is disputed. Quick alleged that she "requested a copy of her children's student records and all information related to preparation and implementation of her children's IEPs." Quick claimed that she handwrote notes in the meeting, which stated, in part, "request full file with any communications," and in the margin of the page above this notation, she stated that she wrote "FOIA, FERPA, IDEA, fully participate." Langridge, on the other hand, testified that she did not recall Quick making any request for records on April 18, 2024.

On May 6, 2024, Quick met with Langridge for an annual review of her children's IEPs.[2] Olivia Finnegan, who worked with Langridge in the Office of Student Support Services at SCPS, was also present at this meeting. Both Langridge and Finnegan testified that Quick made an oral request for "[c]opies of the students' file[s]." This request was corroborated by Langridge's

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the prevailing party at trial." *Norfolk S. Ry. Co. v. Sumner*, 297 Va. 35, 37 (2019).

[2] The circuit court held that while Quick "made a request for some student records during a meeting on May 6, 2024, the records were not identified as required by" VFOIA. Moreover, it appears that Quick does not challenge the May 6, 2024 request on appeal. ("Other than the May 6, 2024 oral request at an IEP meeting, SCPS did not provide records [in response to Quick's other records requests].") We therefore do not address the adequacy of Quick's request on May 6, 2024.

contemporaneous notes from the meeting. Both Langridge and Finnegan testified that Quick did not use the term FOIA or reference the Freedom of Information Act when making her request at this meeting. Finnegan told Quick that they would put the records on a thumb drive and make them available for her to pick up two days later, on May 8, 2024. However, neither Quick nor her husband picked them up until her husband did so on July 18, 2024.

Quick communicated with the school through a messaging system called Talking Points. On May 9, 2024, Quick sent a message on Talking Points to Langridge, in which she stated, among other things,

> our records requests in the past have been incomplete- apparently TNCS sends SCPS a month[ly] report. Despite prior requests for all records, we do not have copies of these reports which should be part of their student records sounding progress towards IEP goals. Please ensure they are included with the records request made Monday.[3]

Langridge testified that the documents that Quick requested in this message were already on the thumb drive that Quick had not picked up.

On May 23, 2024, Quick sent SCPS a three-page letter with the subject line "Quick Information Requests." In the first paragraph of the letter, Quick stated that she was seeking "all correspondence between The New Community School and SCPS/SCPS staff from June 2022 to the present. The Quicks need this information to meaningfully participate in the IEP/IDEA process." The remainder of the letter consisted of a numbered list of 12 concerns that Quick had with SCPS's implementation of her children's IEPs. The last page of the letter asked for SCPS's responses to a number of questions and requested an amendment to one of her children's special education records.

---

[3] Quick testified that "Monday" meant the prior Monday, May 6, 2024.

On May 29, 2024, Quick sent a message through Talking Points, stating, "I am still awaiting responses for information and questions summarized in a document sent last week and some of the requests are from two months ago."

On June 26, 2024, Quick sent another message through Talking Points, in which she said, "Please advise your response to numerous requests for information."

On July 7, 2024, Langridge sent a letter to Quick, giving several reasons why SCPS could not provide certain records she had requested. In the letter, which was signed by Langridge, SCPS stated that it had

> not maintained any communications with TNCS concerning [the students] either in hard copy in the students' files or in electronic storage under either of your students' names on a permanent and secure basis for the purpose of being maintained as an educational record. Therefore, SCPS has no education records responsive to your request to produce.

SCPS also explained that "SCPS did not interpret your request for the communications as a request under" VFOIA. It then stated, "[i]f you would like SCPS to consider your request under FOIA and search for any archived emails, then please let me know, and SCPS will prepare an estimate of the cost for search and producing any responsive records."

On July 17, 2024, Quick retained legal counsel. The following day, on July 18, 2024, at 5:05 p.m., Quick sent a message through Talking Points, which stated, "I am again asking for any information[]- documents, emails, legal invoices and other parts of the students['] record" and that this "request is under FERPA, FoIA, IDEA and corresponding Virginia regulations." Quick testified before the circuit court that this was the only time she invoked FOIA in writing. That same day, July 18, 2024, Quick's husband finally picked up the thumb drive containing the documents that SCPS had prepared for Quick over two months prior.

On October 4, 2024, counsel for Quick sent the Superintendent and FOIA Officer at SCPS a draft petition for writ of mandamus. In the cover email attaching the draft petition,

Quick's attorney wrote, "we wanted to reach out to the school division first to see if we could settle this matter without further litigation." The email then listed specific items that Quick was seeking, including "monthly progress reports received from The New Community School ("TNCS"), IEP progress reports from February of 2023 and April, May, and June of 2024, all report cards from 2013 to present, all signed final drafts of IEP[]s and final PWN[]s, settlement agreements, contracts, and legal invoices related to her children."

On November 5, 2024, counsel for Quick claims she sent an email to SCPS attaching a list of documents that were missing.[4] Quick compiled this list, testifying that "I went through the documents, and I noted what documents were still missing that I had requested." At the bottom of the list, Quick clarified that she was also seeking "all legal invoices and billing records related to this VFOIA matter."

On November 8, 2024, SCPS provided Quick with 1400 pages of responsive requested records, including report cards, progress reports, and IEP progress updates. On November 15, 2024, SCPS produced 100 additional pages of legal invoices. On November 20, 2024, SCPS produced 1000 pages of email correspondence.

On January 13, 2025, counsel for Quick sent counsel for SCPS another email, stating that "there are still missing documents." Attached to this email was the same list as the November 5, 2024 list from Quick's counsel, but it contained notes from Quick in the margins about what was still missing. Quick's counsel also stated, "[M]y client is extending her original request, pursuant to VFOIA, for all legal invoices and billing records related to this VFOIA matter."

On January 17, 2025, SCPS's attorney responded, stating, "I strongly disagree that the requests for documents that you have provided to me were themselves proper VFOIA requests."

_____

[4] We note that this email that Quick claims she sent is not in the record on appeal, but the attached list is.

She noted that "SCPS has made a final good faith effort to review its files to identify any of the documents requested by you on October 4, 2024 that have not yet been produced" but "any other documents that have not yet been produced could not be located." Counsel for SCPS stated that she would forward Quick's new request for legal invoices and billing records to SCPS's FOIA officer, Dr. Dennis W. Martin.[5]

On January 21, 2025, Quick filed her petition for a writ of mandamus in Spotsylvania County Circuit Court. In it, she alleged that she made valid records requests pursuant to VFOIA on the following dates: April 18, 2024, May 9, 2024, May 23, 2024, July 18, 2024, and October 4, 2024, November 5, 2024, and January 13, 2025. In addition to mandamus, Quick sought injunctive relief and attorney fees.

After a hearing and post-trial briefing, the circuit court held by letter opinion that Quick "failed to demonstrate that a VFOIA request for records was made" on April 18, 2024. It found that Quick's handwritten notes from the April 18, 2024 meeting, specifically the words IDEA, FERPA, and VFOIA in the margin "appear to the Court to be out of place and inconsistent with the other notes on pages one and two, and in a significantly different style." It reasoned that "while Petitioner made a request for some student records during a meeting on May 6, 2024, the records were not identified as required by Virginia Code § 2.2-3704(B) and that they were in any event produced for the Petitioner to pick up on May 8, 2024, just two days later, but not picked up until July."

The circuit court then held, "With respect to the remaining of Petitioner's claims, the Court finds convincing counsel for the Respondent's argument as outlined in 'Respondent's

---

[5] On January 27, 2025, Dr. Martin acknowledged receipt of Quick's January 13, 2025 request for legal invoices. He stated that he received the request from SCPS's counsel on January 21, 2025, and requested 7 additional working days to respond to Quick's request. These invoices were provided to Quick on February 5, 2025.

Post-Trial Brief' in Section II(A)-(F) and therefore finds for the Respondent for the reasons articulated." Quick now appeals to this Court.

## II. ANALYSIS

Quick assigns nine errors to the circuit court's judgment. Broadly, and in her ninth assignment of error, she alleges that the circuit court erred "when it denied Parent's request for relief pursuant to VFOIA and found [that] SCPS did not violate VFOIA."

"Except as otherwise specifically provided by law, all public records shall be open to citizens of the Commonwealth." Code § 2.2-3704(A). "A request for public records shall identify the requested records with reasonable specificity. The request need not make reference to this chapter in order to invoke the provisions of this chapter." Code § 2.2-3704(B).

"A writ of mandamus is one of the remedies available under [VFOIA] when a person is denied rights and privileges conferred under the provisions of FOIA. However, '[a] writ of mandamus is an extraordinary remedial process, which is not awarded as a matter of right but in the exercise of a sound judicial discretion.'" *Lawrence v. Jenkins*, 258 Va. 598, 602 (1999) (second alteration in original) (quoting *Richmond-Greyhound Lines, Inc. v. Davis*, 200 Va. 147, 151 (1958)).

A VFOIA claim presents "a mixed question of law and fact." *Hawkins v. Town of South Hill*, 301 Va. 416, 424 (2022) (quoting *Va. Dep't of Corr. v. Surovell*, 290 Va. 255, 262 (2015)). "Issues of statutory construction are questions of law which we review de novo." *McKee Foods Corp. v. County of Augusta*, 297 Va. 482, 495 (2019). "To the extent that the proper application of VFOIA's requirements turns on the specific facts of the case, we owe deference to the trial court's factual findings, unless 'they are "plainly wrong or without evidence to support [them]."'" *Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 205 (2023) (alteration in original)

(first citing *Am. Tradition Inst. v. Rector & Visitors of the Univ. of Va.*, 287 Va. 330, 339 (2014); and then quoting *Grayson v. Westwood Bldgs. L.P.*, 300 Va. 25, 58 (2021)).

A. The April 18, 2024 Meeting[6]

In her second assignment of error, Quick argues, "The Court erred in finding that Parent did not make a request for her children's records on April 18, 2024."

"[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Indeed, '[t]he living record contains many guideposts to the truth which are not in the printed record,' and an appellate court, not having the benefit of these guideposts, 'should give great weight to the conclusions of those who have seen and heard them.'" *Dalton v. Commonwealth*, 64 Va. App. 512, 526 (2015) (alteration in original) (quoting *Bradley v. Commonwealth*, 196 Va. 1126, 1136 (1955)).

Regarding the April 18, 2024 meeting between Quick and Langridge, the circuit court heard testimony from Quick (who testified that she made an oral VFOIA request), and testimony from Langridge (who testified that Quick did not make any request for records). Quick's handwritten notes were also before the circuit court. The circuit court, having heard their testimony and having reviewed Quick's notes, concluded that "the Petitioner has failed to

---

[6] Quick does not specify in her brief to this Court on appeal exactly which requests she is arguing were adequate, nor does she make clear which requests she is alleging SCPS did not timely respond to as required under VFOIA. However, she affirmatively states that "SCPS did not provide records, nor one of the other four mandated responses, within five working days of receiving Parent's multiple requests for records, to include those on April 18, 2024, May 23, 2024, October 4, 2024, and January 13, 2025." Quick's sixth assignment of error also includes reference to a November 5, 2024 request. We therefore only address the requests made on these dates (April 18, 2024, May 23, 2024, October 4, 2024, November 5, 2024, and January 13, 2025) and do not reach the question of whether the messages sent through Talking Points (on May 9, 2024, May 29, 2024, June 26, 2024, and July 18, 2024) were VFOIA requests. *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court.").

demonstrate that a VFOIA request for records was made" on April 18, 2024. The circuit court found "more credible the evidence presented by the Respondent." More specifically, the circuit court cast doubt on the veracity of Quick's handwritten notes, noting that "[t]hese notations appear to the Court to be out of place and inconsistent with the other notes on pages one and two, and in a significantly different style." In other words, the circuit court judge, upon review of the documentary evidence, and having observed direct testimony from Quick and Langridge, made a determination that he found Langridge's version of the events of the April 18, 2024 meeting to be more credible. This Court will not disturb that credibility determination on appeal.

## B. The May 23, 2024 Letter from Quick

In her first assignment of error, Quick argues, "The Court erred as a matter of law in adopting School Board's assertion that a citizen requesting records from a public agency is required to explicitly indicate that the request is made pursuant to VFOIA." Similarly, in her third assignment of error, Quick argues that the circuit court erred "in adopting School Board's assertion that School Board did not deny any clearly established rights and privileges under VFOIA with respect to Parent's written request for communications on May 23, 2024."

With regard to the May 23, 2024 letter from Quick to SCPS, the circuit court found for SCPS "for the reasons articulated" in its post-trial brief. In that brief, SCPS argued that Quick's May 23, 2024 letter was not a request under VFOIA because (1) it asked questions of SCPS, (2) the request for records specifically invoked the Individuals with Disabilities Education Act ("IDEA"), and (3) Quick's reading of VFOIA, whereby VFOIA governs every request for records, is unsupported by Virginia law.

The Virginia Freedom of Information Advisory Council ("VFIAC"),[7] the state agency tasked with advising private citizens and public bodies about VFOIA, has stated, "FOIA applies to requests for public records, not requests for information or for answers to questions." Va. Freedom of Info. Advisory Council, Advisory Op. AO-03-23 (Dec. 27, 2023). SCPS is correct in its conclusion that Quick's 12 concerns enumerated in her May 23, 2024 letter do not give rise to any obligation under VFOIA.

However, the first paragraph of the letter did request "all correspondence between The New Community School and SCPS/SCPS staff from June 2022 to the present. The Quicks need this information to meaningfully participate in the IEP/IDEA process." Quick expressly invoked IDEA and described her need for the correspondence in order for her to "meaningfully participate" in the implementation of her children's IEPs. IDEA requires that parents must be able to inspect and review their children's special education records—including correspondence between school personnel about those children's special education—"without unnecessary delay and before any meeting regarding an IEP." 34 C.F.R. § 300.613(a).

Langridge, as Executive Director of Student Support Services at SCPS, was responsible for "the implementation of special education services" for students at SCPS, including handling the records requests made to her office. Before the circuit court, Langridge testified that "99% of our dealings [with parents requesting records] are under" IDEA.

The law is clear that Quick need not have specifically invoked VFOIA in her records request to have made a valid VFOIA request. *See* Code § 2.2-3704(B) ("The request need not

---

[7] "The Advisory Council was 'created as an advisory council in the legislative branch to encourage and facilitate compliance with' VFOIA." *Wahlstrom*, 302 Va. at 205 n.10 (quoting Code § 30-178(A)). The Council is authorized by statute to issue advisory opinions, which, "while not binding on the Court, are instructive." *Id.* (quoting *Transparent GMU v. George Mason Univ.*, 298 Va. 222, 243 (2019)).

- 10 -

make reference to this chapter in order to invoke the provisions of this chapter."). However, it was reasonable for SCPS to interpret her May 23, 2024 letter as a request pursuant to IDEA.

First, Quick specifically linked her request for communications to IDEA when she reasoned that she needed "this information to meaningfully participate in the IEP/IDEA process." On cross-examination at the hearing, Quick admitted that these were the kinds of documents to which she was entitled under the IDEA.

Secondly, Virginia Board of Education regulations specifically require that correspondence between school personnel about a student with an IEP and that are maintained by the school be included in a child's scholastic record (i.e., emails between SCPS and TNCS), which are precisely the kind of records a parent could request under IDEA. *See* 8VAC20-81-170(G)(11)(b) ("Each local educational agency shall ensure that electronic communications via emails or facsimiles regarding any matter associated with the child, including matters related to IEP meetings, disciplinary actions, or service delivery, is part of the child's educational record.").

Finally, considering the parties' prior course of dealings, especially in light of Langridge's testimony that 99% of the records requests received by her office were pursuant to IDEA, it was reasonable for SCPS to interpret Quick's May 23, 2024 letter as a request under IDEA, not VFOIA.[8] The circuit court therefore did not err when it declined to issue a writ of mandamus to compel SCPS to produce documents in response to Quick's May 23, 2024 letter.

---

[8] We do not reach the question of whether SCPS complied with IDEA's required deadlines when it produced over 1000 pages of email correspondence on November 20, 2024, as that question is not before this Court in this appeal.

Given that we hold that Quick did not make a VFOIA request on May 23, 2024, we also do not reach the merits of the question posed in Quick's fourth assignment of error about SCPS's July 7, 2024 response to Quick's May 23, 2024 letter.

### C. The October 4, 2024 Email from Quick's Attorney

In her fifth assignment of error, Quick argues, "The Court erred in adopting School Board's assertion that School Board did not deny any clearly established rights and privileges under VFOIA with respect to Parent's request for records [on] October 4, 2024 contained in her settlement demand emailed to the School Board's VFOIA Officer and Superintendent."

This email was sent by Quick's attorney to SCPS's Superintendent, Dr. Clint Mitchell, and SCPS's FOIA Officer, Dr. Dennis Martin. In it, she requested:

> [A]ll scholastic records for her children [B.Q.] and [L.Q.], including but not limited to any email correspondence (to include communications between SCPS and the children's private day school) from June 2022 to the present, monthly progress reports received from The New Community School ("TNCS"), IEP progress reports from February of 2023 and April, May, and June of 2024, all report cards from 2013 to present, all signed final drafts of IEP[]s and final PWN[]s, settlement agreements, contracts, and legal invoices related to her children.

Attached to the email was a draft petition for writ of mandamus. In the email, Quick's counsel stated, "[W]e wanted to reach out to the school division first to see if we could settle this matter without further litigation."

With respect to this request, the circuit court again adopted SCPS's argument in its post-trial brief that "[t]he October 4, 2024 e-mail was clearly a mandated portion of the pre-litigation process under FOIA; it was not a FOIA request." We disagree.

VFOIA states that "[a] request for public records shall identify the requested records with reasonable specificity. The request need not make reference to this chapter in order to invoke the provisions of this chapter." Code § 2.2-3704(B).

We first note that—although she was not required to do so by statute—Quick's attorney did make explicit reference to VFOIA in this October 4, 2024 email. The subject line of the email was "Violations of the Va Freedom of Information Act." In addition, Quick's attorney

identified herself in the email as "a special education attorney hired by Ms. Tamara Quick to represent her . . . for violations of her rights under the Virginia Freedom of Information Act."

We also note that Quick's requests for records were made with "reasonable specificity." Code § 2.2-3704(B). She identified, for example, IEP progress reports from February 2023, April 2024, May 2024, and June 2024. This level of specificity was more than adequate to put SCPS on notice of the documents she was requesting, yet she did not receive them—or any other documents she requested in this October 4, 2024 email—within 5 working days, as required by VFOIA. Code § 2.2-3704(B) ("Any public body that is subject to this chapter and that is the custodian of the requested records shall promptly, but in all cases within five working days of receiving a request, provide the requested records to the requester or [give one of four statutorily defined responses].").

SCPS argued in its post-trial brief (an argument which was subsequently adopted by the circuit court) that it "subsequently produced over 1,000 pages of documents to Petitioner voluntarily in an attempt to amicably resolve the dispute. Any violation resulting from a delay in the production of the records beyond five business days or to otherwise comply with the formalities of FOIA was technical in nature." In its brief to this Court, SCPS relies on *Lawrence v. Jenkins*, 258 Va. 598 (1999), to support its position that any VFOIA violations they may have committed were technical and, therefore, excusable. That case is clearly distinguishable.

In *Lawrence*, the requester submitted a VFOIA request to a zoning administrator for all documents related to complaints against his property in Frederick County. *Id.* at 600. While the zoning administrator timely produced the responsive documents, he redacted the identities of the complainants without invoking the specific Code section that made that information confidential. *Id.* at 600-01. The zoning administrator later advised the requester of the specific Code section, after the five working day timeline had expired. *Id.* at 601. The Supreme Court held that

"Jenkins received all the information that he was entitled to receive under FOIA. Lawrence's failure to refer to [the Code section] within five work days did not bring about a denial of any rights or privileges afforded to Jenkins under the provisions of FOIA." *Id.* at 603.

The case now before this Court presents a very different question. Quick requested specific documents on October 4, 2024, and SCPS did not produce those documents—nor respond to her request as they were required to do by statute—until November 8, 2024, over a month later. We cannot say that a month-long delay is at all analogous to Lawrence's timely production within five working days and his simple failure to cite to a specific Code section. *See id.* We therefore disagree that SCPS's significant delay of approximately a month in producing records responsive to Quick's October 4, 2024 request was simply technical in nature, and we reverse the circuit court's judgment as to Quick's fifth assignment of error.

D. Quick's Purported Requests on November 5, 2024 and January 13, 2025[9]

In her sixth assignment of error, Quick argues,

> The Court erred in adopting School Board's assertion that School Board did not deny any clearly established rights and privileges under VFOIA with respect to Parent's November 5, 2024, and January 13, 2025, requests for legal invoices because Parent's counsel submitted them to School Board's counsel, who is an agent of School Board, but not a public body subject to VFOIA.

1. *The Purported November 5, 2024 Email*

The purported November 5, 2024 email from Quick's attorney to SCPS is not in the record on appeal. The record only contains the attachment to this purported email, a list of

___

[9] In her eighth assignment of error, Quick alleges, "The Court erred in adopting School Board's assertion that Parent failed to plead her alleged violations of VFOIA with reasonable specificity" as to her requests on November 5, 2024 and January 13, 2025. Because we find that these requests were not properly proven or made, we do not reach this assignment of error. "The 'doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available."'" *Bozarth v. Shelton*, 87 Va. App. 401, 408 n.4 (2026) (quoting *Heald v. Rappahannock Elec. Coop.*, 80 Va. App. 53, 72 n.7 (2024)).

documents created by Quick. Quick testified at the hearing that the list was sent on November 5, 2024. During Quick's testimony about the November 5, 2024 list, the circuit court judge asked, "I'm sorry, is this from you?" Quick's attorney responded, "It was sent by me to the school board." However, the circuit court made a factual finding that "Petitioner's counsel sent two emails to SCPS's counsel requesting legal invoices related to the VFOIA matter [on November 5, 2024 and January 13, 2025]."

"To the extent that the proper application of VFOIA's requirements turns on the specific facts of the case, we owe deference to the trial court's factual findings, unless 'they are "plainly wrong or without evidence to support [them].""" *Wahlstrom*, 302 Va. at 205 (alteration in original) (first citing *Am. Tradition Inst.*, 287 Va. at 338; and then quoting *Grayson*, 300 Va. at 58). Here, even given the deference we owe to a circuit court's findings of fact, we cannot say that the factual finding that Quick sent this list to SCPS's attorney on November 5, 2024 was supported by credible evidence in the record (or, if it was sent, (1) what the email even said, and (2) to what entity it was sent—i.e., if it was sent to the school board, as Quick's attorney told the circuit court, or to the school board's attorneys, as was found by the circuit court). The circuit court concluded that "Petitioner's counsel sent two emails to *SCPS's counsel*"—without ever laying eyes on the supposed November 5, 2024 email itself. (Emphasis added). This decision was plainly wrong, as the circuit court could not have possibly known to whom the email was sent, on what date it was sent, nor whether this list was attached because there is no such November 5, 2024 email in the record on appeal.

Tamara Quick bore the burden of proving that her rights under VFOIA were violated when she made a VFOIA request on November 5, 2024. *See Saville v. Richmond*, 162 Va. 612, 615 (1934) ("It is elemental that the person applying for relief by mandamus must show a clear legal right to have the duty sought to be enforced performed by the defendant in the manner

specified in the petition."). In addition, as the appellant, Quick bore the burden of furnishing this Court with an adequate appellate record. *See Berglund Chevrolet, Inc. v. Virginia Dep't of Motor Vehicles*, 71 Va. App. 747, 759 (2020) ("An appellant bears the burden of providing an adequate record from which the appellate court can review its claimed assignments of error"). Quick has failed to bear these burdens by admitting into evidence only the list allegedly attached to the purported November 5, 2024 email—but not the email itself. Without that purported email that supposedly conveyed this list (that is in the record), this Court—and the circuit court— cannot say with any certainty whether a VFOIA request was properly made on November 5, 2024. We therefore do not disturb the circuit court's holding that Quick did not make a VFOIA request on November 5, 2024, but on the very basic grounds that appellant Quick did not sufficiently bear her burden of proof of showing in the record that she even made a VFOIA request to SCPS on November 5, 2024.[10]

## 2. *The January 13, 2025 Email*

On January 13, 2025, Quick's attorney sent the same list to SCPS's attorneys, with Quick's notes about what was still missing after SCPS's voluminous production of documents in November 2024. Attached to this January 13, 2025 email was a revised draft petition for a writ of mandamus. The email and the list are both in the record on appeal.

Quick assigns error to the circuit court's ruling that SCPS did not deny her rights under VFOIA because these emails were sent to SCPS's attorney, and the attorney as an agent of SCPS is not a public body subject to VFOIA. As with the other alleged requests under VFOIA by Quick, the circuit court, in its April 24, 2025 letter opinion, adopted the arguments made in SCPS's post-trial briefing. As relevant to the January 13, 2025 email, SCPS argued that because

_____

[10] It is not in dispute that there is no November 5, 2024 email from Quick or her counsel to SCPS or its law firm in the record before us on appeal that supposedly conveyed this list of requested documents to SCPS.

that email was directed to SCPS's attorneys and not to SCPS directly, the attorneys at their law firm were under no obligation to comply with VFOIA because the "Counsel for SCPS is not a 'public body,' and therefore a request for records submitted to counsel is not a VFOIA request."

Only "public bodies" are "subject to" VFOIA. Code § 2.2-3704(B). "Public body" is defined as:

> [A]ny legislative body, authority, board, bureau, commission, district, or agency of the Commonwealth or of any political subdivision of the Commonwealth, including counties, cities, and towns, municipal councils, governing bodies of counties, school boards, and planning commissions; governing boards of public institutions of higher education; and other organizations, corporations, or agencies in the Commonwealth supported wholly or principally by public funds. It shall include (i) the Virginia Birth-Related Neurological Injury Compensation Program and its board of directors established pursuant to Chapter 50 (§ 38.2-5000 et seq.) of Title 38.2 and (ii) any committee, subcommittee, or other entity however designated of the public body created to perform delegated functions of the public body or to advise the public body. It shall not exclude any such committee, subcommittee, or entity because it has private sector or citizen members. Corporations organized by the Virginia Retirement System are "public bodies" for purposes of this chapter.

Code § 2.2-3701.

VFIAC has previously advised that to determine if a non-governmental entity is acting as an agent of a public body, "one must examine the elements of the common law 'principal-agent' relationship." Va. Freedom of Info. Advisory Council, Advisory Op. AO-19-03 (July 10, 2003). Virginia law is clear that "an attorney is the agent of his client." *Va. Elec. & Power Co. v. Bowers*, 181 Va. 542, 547 (1943). As such, SCPS's private law firm was certainly acting as SCPS's agent.

However, the Virginia Supreme Court has stated that agents of public bodies are not subject to VFOIA. *See Transparent GMU v. George Mason Univ.*, 298 Va. 222, 248 (2019). SCPS's law firm, a private entity not "supported wholly or principally by public funds," was not

- 17 -

obligated to respond to Quick's request under VFOIA for legal invoices in her January 13, 2025 email. Code § 2.2-3701. For this VFOIA request by email to have given rise to any obligations under VFOIA, it should have been lodged with SCPS itself—the public body that possessed, controlled, and maintained the requested records and that fell under the statute's definition of entities subject to VFOIA.

VFOIA does not define to whom a records request must be made. However, a straightforward reading of other definitions in VFOIA confirms our view. As noted *supra*, the definition of "public body" in VFOIA does not include the term "agent." Code § 2.2-3701. The definition of "public records," however, does. "Public records" include those "prepared or owned by, or in the possession of a public body or its officers, employees, or *agents* in the transaction of public business." *Id.* (emphasis added). In other words, a private sector agent of a public body can maintain or possess public records on behalf of the public body, but the agent itself of the public body is not subject to VFOIA where any obligation is created upon receipt by that agent of a records request.[11]

Moreover, VFOIA also requires "all local public bodies" to "designate and publicly identify one or more Freedom of Information Act officers (FOIA officer) whose responsibility is to serve as a point of contact for members of the public in requesting public records and to coordinate the public body's compliance with the provisions of this chapter." Code § 2.2-3704.2(A). "[M]embers of the public may direct requests for public records" to these FOIA officers (which the law firm does not have). *Id.* at (C). Sending a request to a public

---

[11] We note that while it is certainly possible that SCPS's law firm could have been in possession of the requested legal invoices, it is also possible that other agents represented SCPS in relation to this VFOIA dispute and would have possessed other responsive documents not in this agent's possession. Notwithstanding this fact, the law firm was under no obligation to respond to the request for legal invoices, even if it were in possession of at least some. That responsibility under VFOIA rested with SCPS, the public body.

body's FOIA officer is sufficient, but not necessary, for it to be a valid VFOIA request. However, we find that sending the request *to the public body* is necessary to make it a valid VFOIA request—not its private sector agent.

Although VFOIA does not define "custodian," considering these provisions of VFOIA in concert with each other—i.e., that "public body" does not include "agent," but that "public records" does, and that localities must designate a FOIA officer to whom citizens can direct requests—the circuit court did not err when it adopted SCPS's position that the January 13, 2025 email to SCPS's counsel did not actually constitute a proper request under VFOIA.[12]

### E. Whether SCPS Produced All Requested Records

In her seventh assignment of error, Quick argues, "The Court erred in failing to make a determination whether School Board provided all requested records to the Parent."

The circuit court, in its April 24, 2025 letter opinion, made factual findings as to the April 18, 2024 meeting (finding that Quick did not make a records request) and the May 6, 2024 meeting[13] (finding that while Quick "made a request for some student records," they were not identified with sufficient specificity, as required by VFOIA). With regard to the remainder of the alleged requests that Quick made that are before this Court on appeal (those made on May 23, 2024, October 4, 2024, November 5, 2024, and January 13, 2025), the circuit court stated, "the Court finds convincing counsel for the Respondent's arguments as outlined in

---

[12] Our holding should not be interpreted to relieve attorneys of their professional obligations to ensure their clients' compliance with VFOIA pursuant to the Virginia Rules of Professional Conduct. *See, e.g.*, Preamble to the Virginia Rules of Professional Conduct ("A lawyer's conduct should conform to the requirements of the law."). We simply hold that a private law firm is not subject to VFOIA.

[13] Quick does not appear to challenge the circuit court's finding about the May 6, 2024 meeting. *See supra* note 2.

- 19 -

'Respondent's Post-Trial Brief' in Section II(A)-(F) and therefore finds for the Respondent for the reasons articulated."

We first note that "trial courts need not state factual findings or legal conclusions unless required by statute." *Pui Ho v. Rahman*, 79 Va. App. 677, 689 n.8 (2024) (quoting *Smith v. Commonwealth*, 78 Va. App. 371, 390 n.6 (2023)). However, this Court can only assess a circuit court's decision regarding a violation of VFOIA where the record is adequately clear to effectuate appellate review. *See Commonwealth v. Sawyer*, 84 Va. App. 547, 567 (2025). "We cannot decide the issue 'in a vacuum' without knowledge of the 'precise nature' of the documents under review or give 'an advisory opinion unsupported by any documentary record whatever.'" *Id.* (quoting *LeMond v. McElroy*, 239 Va. 515, 520 (1990)).

The Supreme Court has held that when an appellate record does not contain the documents withheld by a public body asserting an exemption under VFOIA, an appellate court cannot rule on the dispositive issue. *See LeMond*, 239 Va. at 520-21; *Moore v. Maroney*, 258 Va. 21, 25-27 (1999); *Bland v. Va. State Univ.*, 272 Va. 198, 201-03 (2006). *See also Sawyer*, 84 Va. App. at 567-68. However, in those cases, the appellate courts were determining whether VFOIA exemptions applied to records that the public bodies sought to withhold.

Here, SCPS is not actually seeking to withhold any documents, and there is no dispute about whether any VFOIA exemption would apply to specific documents, such as the monthly IEP progress reports requested for the two Quick children. The dispute is whether SCPS responded to this October 4, 2024 VFOIA request, as required by statute, *at all*. Quick testified at the hearing that she received no correspondence or documents requested from SCPS within five working days of October 4, 2024. SCPS does not appear to dispute this fact. At oral argument before this Court, appellee could not assure this Court that readily identified specific documents that were properly requested on October 4, 2024—e.g., the IEP progress reports for

the Quick children from February 2023, April 2024, May 2024, and June 2024—had ever been produced. If SCPS was not in possession of these progress reports, it had a statutory obligation to say so in writing—and within five working days. *See* Code § 2.2-3704(B)(3). It did not do so, which was a violation of VFOIA on its face. SCPS did not even request a seven-day extension, as allowed under VFOIA. In fact, SCPS did not even provide any documents in response until November 8, 2024—more than a month after the October 4, 2024 VFOIA request.

Therefore, for all of these reasons, we remand this matter to the circuit court for it to review the request to SCPS made under VFOIA by Quick's counsel on October 4, 2024 to determine (1) why SCPS apparently never produced specific documents such as the Quick children's progress reports for February 2023, April 2024, May 2024, and June 2024; (2) whether SCPS failed to meet the statutory requirements under VFOIA for *timely* producing specific documents properly requested in the October 4, 2024 request; and (3) whether mandamus should issue against SCPS if it failed to timely produce certain documents it possessed that were properly requested under VFOIA on October 4, 2024.

### III. CONCLUSION

In short, for all of the foregoing reasons, we do not disturb the judgment of the circuit court as to the April 18, 2024 meeting, the May 6, 2024 meeting, the May 23, 2024 letter, the purported November 5, 2024 email, and the January 13, 2025 email. However, we reverse the circuit court's judgment as to the October 4, 2024 request, and remand to the circuit court for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*